**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF SOUTH CAROLINA**

| | |
|---|---|
| In re, | Case No. 13-03324-dd |
| Christine Lighty, | Chapter 13 |
| Debtor. | |
| In re, | Case No. 14-00825-dd |
| Gilbert Ted King and Renee Gardner King, | Chapter 13 |
| Debtors. | |
| In re, | Case No. 14-00922-dd |
| Johnnie Lee King, | Chapter 13 |
| Debtor. | |

# ORDER

These matters are before the Court on claim objections filed by the debtors in each of the above cases. The debtor in case number 13-03324-dd, Christine Lighty ("Lighty"), objected to the claim of creditor J.P. Morgan Chase Bank, N.A. ("Chase") on March 19, 2014, and Chase responded in opposition. The debtors in case number 14-00825-dd, Gilbert Ted King and Renee Gardner King (collectively, the "Kings"), objected to the claim of creditor CitiMortgage, Inc. ("CitiMortgage") on March 19, 2014, and CitiMortgage responded in opposition. The debtor in case number 14-00922-dd, Johnnie Lee King ("Johnnie King"), objected to the claim of creditor Bayview Loan Servicing, LLC ("Bayview") on March 27, 2014. Bayview did not respond in opposition. Although filed as objections to proofs of claim in all three cases, the matters before

1

the Court are actually motions for a determination of fees, expenses, or charges under Federal Rule of Bankruptcy Procedure 3002.1(e).  The Court held a hearing on May 19, 2014, at which it heard the Rule 3002.1(e) motions in all three cases at the same time, with the consent of the parties, because the issues are largely the same and the same attorney represents the debtors in all three cases.  Bayview did not appear at the hearing in opposition to Johnnie King's Rule 3002.1(e) motion.  After careful consideration of the arguments of counsel, evidence submitted, and applicable law, the Court issues the following findings of fact and conclusions of law under Federal Rule of Civil Procedure 52(a), made applicable by Federal Rule of Bankruptcy Procedure 9014.[1]

# FINDINGS OF FACT

1.     Lighty filed a bankruptcy petition under chapter 13 of the Bankruptcy Code on June 4, 2013.  Her bankruptcy is assigned case number 13-03324-dd.  The Court confirmed Lighty's chapter 13 plan on August 15, 2013.  Lighty owes a debt to Chase that is secured by a first mortgage on her residence.  Lighty's bankruptcy schedules list the value of the residence as significantly less than the amount owed to Chase.  Lighty's confirmed plan indicates she was behind on her monthly payments to Chase at the time she filed bankruptcy.  Her plan calls for her to pay a certain amount to the chapter 13 trustee every month.  The chapter 13 trustee then pays a portion of this amount toward "the arrearage [owed to Chase] as stated in [Chase's] allowed claim or as otherwise ordered by the Court."  Under the plan, Lighty is to pay "directly to [Chase] non-arrearage payments arising under [her] agreement with [Chase]."  Chase filed a

---

[1] To the extent any of the following findings of fact constitute conclusions of law, they are adopted as such, and to the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

2

proof of claim on September 24, 2013, indicating an arrearage of $1,194.92 as of the date Lighty filed bankruptcy. On September 25, 2013, Chase filed a Notice of Postpetition Mortgage Fees, Expenses, and Charges pursuant to Federal Rule of Bankruptcy Procedure 3002.1. This Notice lists fees, expenses, and charges of $425 described as being for "Attorney fee: POC and Plan review." Lighty objects to this $425 fee.

2.  The Kings filed a bankruptcy petition under chapter 13 of the Bankruptcy Code on February 14, 2014. Their bankruptcy is assigned case number 14-00825-dd. The Court confirmed their chapter 13 plan on April 14, 2014. The Kings owe a debt to CitiMortgage that is secured by a first mortgage on their residence. The Kings' bankruptcy schedules list the value of their residence at more than twice the amount of the debt owed to CitiMortgage. The Kings' confirmed plan indicates they were behind on their monthly payments to CitiMortgage at the time they filed bankruptcy. The Kings' plan treats their debt to CitiMortgage in the same manner as Lighty's plan treats her debt to Chase. CitiMortgage filed a proof of claim on March 10, 2014, indicating an arrearage of $5,386.59 as of the date the Kings filed bankruptcy. On March 10, 2014, CitiMortgage filed a Notice of Postpetition Mortgage Fees, Expenses, and Charges pursuant to Rule 3002.1. This Notice lists fees of $425 described as "[b]ankruptcy/[p]roof of claim fees." The Kings object to this $425 fee.

3.  Johnnie King filed a bankruptcy petition under chapter 13 of the Bankruptcy Code on February 21, 2014. His bankruptcy is assigned case number 14-00922-dd. The Court confirmed his chapter 13 plan on May 8, 2014. Johnnie King owes a debt to Bayview that is secured by a first mortgage on his residence. His bankruptcy schedules list the value of his residence as significantly less than the amount owed to Bayview. Bayview's treatment under Johnnie King's plan is the same as the treatment of Chase under Lighty's plan and CitiMortgage

3

under the Kings' plan. Johnnie King's case is different in that Bayview filed a proof of claim on March 20, 2014, indicating no arrearage as of the date Johnnie King filed bankruptcy. On March 26, 2014, Bayview filed a Notice of Postpetition Mortgage Fees, Expenses, and Charges pursuant to Rule 3002.1. This Notice lists fees of $425 described as "Bankruptcy/Proof of claim fees." Johnnie King objects to this $425 fee.

4.    At the time the Rule 3002.1 notice at issue in Lighty's bankruptcy was filed, $425 was, under what the parties refer to as the Fannie Mae guidelines, the allowable fee reimbursement for servicers for "Proof of Claim Preparation & Plan Review." According the Fannie Mae guidelines, this fee includes:

- Communicating with the servicer to obtain the necessary information about the debtor's mortgage loan(s) and backup documentation for the [proof of claim ("POC")];
- Preparing and filing the POC form, and up to one amended POC form;
- Verifying that the POC is properly docketed;
- Monitoring the docket, and obtaining and reviewing the original and up to two amended Plans;
- Analyzing Plan(s);
- Reviewing any disclosure statement and ballot (if applicable); and
- Communicating and negotiating with the Servicer, any trustee and debtor's counsel.

Chase's Brief on Statutory, Case Law, and Other Authority, p. 5 (docket entry 28, attach. 2). At the time of the hearing, this amount under the Fannie Mae guidelines had increased to $650. The Fannie Mae guidelines are rules for servicing a loan that is going to be sold to Fannie Mae.

5.    The note creating the debt Lighty owes to Chase states that a default occurs if Lighty does "not pay the full amount of each monthly payment on the date it is due." If Lighty is in default, Chase "may send [her] a written notice telling [her] that if [she] do[es] not pay the overdue amount by a certain date, [Chase] may require [her] to pay immediately the full amount of Principal which has not been paid and all the interest that [she] owe[s] on that amount." If

4

Chase has required Lighty "to pay immediately in full" the full amount of Principal which has not been paid and all the interest that [she] owe[s] on that amount, Chase "will have the right to be paid back by [Lighty] for all of its costs and expenses in enforcing [the] Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees."

      6.      Section 9 of the mortgage securing the debt Lighty owes to Chase provides:

> If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, [or] (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), . . . then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. . . .
> 
> Any amounts disbursed by Lender under this Section . . . shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

      7.      The notes creating the debts the Kings owe to CitiMortgage and Johnnie King owes to Bayview and the mortgages securing these debts contain the same language as the note and mortgage between Lighty and Chase.

      8.      At the hearing, Marilyn Lea, who is a home loan research officer for Chase, testified. Her duties entail reviewing loans that are in litigation, attending mediations, and attempting to accomplish settlements. She also attends depositions, hearings, and trials. She is not an attorney. She is familiar with Chase's policies and is familiar with Chase's loan to Lighty. The Scott Law Firm prepared the proof of claim Chase filed, and Chase's records for the

5

loan are attached to the proof of claim. In the absence of other guidelines, Chase follows the Fannie Mae guidelines in charging for the services performed in connection with the $425 set forth in the Rule 3002.1 notice filed in Lighty's case. Lea testified Chase depends on local counsel for assistance in complying with local rules, guidelines, and procedures.

9. Lea also testified that when a customer files bankruptcy, Chase's customer service representatives will not engage in discussions with the customer. Rather, the customer has to go through Chase's counsel to engage in discussions with Chase.

10. Additionally, Chase called Elizabeth Polk as a witness. Polk is an attorney at the Scott Law Firm and was involved in performing the services reflected in the Rule 3002.1 notice filed in Lighty's bankruptcy. In determining what constitutes a reasonable fee to charge in a particular case, the Scott Law Firm generally follows the Fannie Mae guidelines. Chase retains the Scott Law Firm to review schedules, review documentation related to the loan, and review the chapter 13 plan. There is a continuing duty throughout the bankruptcy to review the plan. The work includes checking the schedules to see if a better payment can be made toward any arrearage. Polk does not believe in-house counsel at Chase would be familiar with the form chapter 13 plan used in the District of South Carolina. Polk is also familiar with local rules, guidelines, and procedures.

11. Polk testified the work involved in preparing the proof of claim Chase filed in the Lighty bankruptcy included filing a notice of appearance, reviewing schedules, reviewing public documents, making sure she has the correct documents associated with the particular debtor, reviewing the plan to ensure Chase is included and its treatment is proper, preparing the proposed proof of claim, submitting the proof of claim for Chase's review, making any revisions, and submitting the proof of claim a second time for Chase's review. She does not believe a non-

lawyer could correctly prepare a proof of claim for a claim secured by a residential real property mortgage. Scott Law Firm does not keep time records for these matters, but Polk estimates three hours of paralegal time and one hour of attorney time were spent in connection with the proof of claim filed in Lighty's case. Part of the firm's work for the $425 also includes monitoring the case and reviewing any plan modifications filed post-confirmation. There has been a post-confirmation amendment to the plan in Lighty's case, which did not affect the treatment in the plan of the debt owed to Chase.

12. Polk testified her office did not provide more detail regarding the work performed in connection with the $425 fee reflected on the Rule 3002.1 notice because the line on the form notice was too short and the length of the line suggested that more detail was not necessary.

13. Chase introduced into evidence a bill that includes $425 for attorney fees for services the Scott Law Firm performed in Lighty's bankruptcy. Chase's ex. 3. The bill was actually for $440.25, as it included $10 for an active military search and $5.25 for a skip trace search. *Id.* These latter two charges were not included in the Rule 3002.1 notice.

14. John Kelchner, who is the local attorney for CitiMortgage in the Kings' case, introduced into evidence the invoice sent to CitiMortgage for the services reflected in the Rule 3002.1 notice filed in the Kings' bankruptcy. CitiMortgage's ex. C. He proffered the work his firm performed and for which it charged $425 was essentially the same as the work undertaken by the Scott Law Firm in the Lighty bankruptcy. Proposed post-confirmation amendments to the Kings' plan were filed on May 7, 2014, and June 12, 2014. The May 7, 2014 proposed amendment did not change the treatment in the plan of the debt owed to CitiMortgage. The June 12, 2014 proposed amendment increases the amount being paid each month under the plan on the arrearage owed to CitiMortgage from $75 to $97. The Kings' counsel did not object to

Kelchner's proffer or request that CitiMortgage call a witness to be placed under oath so that he could question the witness about the work performed.

15.     Non-lawyers routinely prepare and file proofs of claims in bankruptcy cases. A business entity is not required under the District of South Carolina Local Bankruptcy Rules to be represented by counsel when filing proofs of claims or interests and related documents. *See* Bankr. D.S.C. R. 9011-2(c).

16.     The confirmed plans in all three cases before the Court utilize the form plan attached as exhibit A to District of South Carolina Local Bankruptcy Rule 3015-1. Rule 3015-1 requires chapter 13 debtors to use this form plan or "a plan in substantial conformance with [it]." This Rule also requires a debtor who "proposes changes to [the form plan] or proposes an alternative plan format" to "file and serve with the plan a cover sheet that identifies and summarizes the changes." Under the form plan and the plans confirmed in these three cases, the chapter 13 trustee pays "the arrearage as stated in the creditor's allowed claim or as otherwise ordered by the Court." The $425 at issue in these three cases is not indicated in the arrearages stated in the creditors' claims, and the Court has not ordered a different amount be paid. Therefore, the $425 fee that was noticed is not being paid by the chapter 13 trustee as part of distributing the funds the debtors pay into the plans.

## **CONCLUSIONS OF LAW**

Although treated by the parties as objections to proofs of claim and responses, the matters before the Court are notices, under Federal Rule of Bankruptcy Procedure 3002.1(c), of fees incurred after the bankruptcy cases were filed and motions by the debtors under Rule 3002.1(e). Rule 3002.1, which became effective in December of 2011, applies "in a chapter 13 case to

8

claims that are (1) secured by a security interest in the debtor's principal residence, and (2) provided for under § 1322(b)(5) of the Code in the debtor's plan." Fed. R. Bankr. P. 3002.1(a). Rule 3002.1(c) provides that a holder of such a claim "shall file and serve on the debtor, debtor's counsel, and the trustee a notice itemizing all fees, expenses, or charges (1) that were incurred in connection with the claim after the bankruptcy case was filed, and (2) that the holder asserts are recoverable against the debtor or against the debtor's principal residence.  The notice shall be served within 180 days after the date on which the fees, expenses, or charges are incurred." Under Rule 3002.1(e), "[o]n motion of the debtor or trustee filed within one year after service of a notice under subdivision (c) of this rule, the court shall, after notice and hearing, determine whether payment of any claimed fee, expense, or charge is required by the underlying agreement and applicable nonbankruptcy law to cure a default or maintain payments in accordance with § 1322(b)(5) of the Code." Under 11 U.S.C. § 1322(b)(5), a chapter 13 plan may "provide for the curing of any default within a reasonable time and maintenance of payments while the case is pending on any unsecured claim or secured claim on which the last payment is due after the date on which the final payment under the plan is due."  The Advisory Committee Notes to Rule 3002.1 explain the purpose of the Rule:

> In order to be able to fulfill the obligations of § 1322(b)(5), a debtor and the trustee must be informed of the exact amount needed to cure any prepetition arrearage . . . and the amount of the postpetition payment obligations.  If the latter amount changes over time, due to the adjustment of the interest rate, escrow account adjustments, or the assessment of fees, expenses, or other charges, notice of any change in payment amount needs to be conveyed to the debtor and trustee. Timely notice of these changes will permit the debtor or trustee to challenge the validity of any such charges, if necessary, and to adjust postpetition mortgage payments to cover any properly claimed adjustment.  Compliance with the notice provision of the rule should also eliminate any concern on the part of the holder of the claim that informing a debtor of a change in postpetition payment obligations might violate the automatic stay.

9

**A. 11 U.S.C. 506(b)**

Lighty and the Kings assert 11 U.S.C. 506(b) applies to the matters before the Court. Section 506(b) provides that "[t]o the extent that an allowed secured claim is secured by property the value of which, after any recovery under subsection (c) of this section, is greater than the amount of such claim, there shall be allowed to the holder of such claim, interest on such claim, and any reasonable fees, costs, or charges provided for under the agreement or State statute under which such claim arose." However, section 506(b) does not apply to Lighty's case and the Kings' case because they are proposing to cure defaults through their chapter 13 plans. *See* 11 U.S.C. § 1322(e) ("Notwithstanding subsection (b)(2) of this section and sections 506(b) and 1325(a)(5) of this title, if it is proposed in a plan to cure a default, the amount necessary to cure the default, shall be determined in accordance with the underlying agreement and applicable nonbankruptcy law."); *Deutsche Bank Nat'l Trust Co. v. Tucker*, 621 F.3d 460, 464 (6th Cir. 2010).

**B. Rule 3002.1(e)**

The inquiry in which the Court is called to engage under Rule 3002.1(e) is whether payment of the fees at issue is "required by the underlying agreement and applicable nonbankruptcy law to cure a default or maintain payments in accordance with § 1322(b)(5) of the Code."

*1. Lighty's case and the Kings' case*

<u>a. Whether payment of the fees is required by the underlying agreement to cure a default or maintain payments</u>

First, with respect to whether payment of the fees at issue is required by the parties' agreement to cure a default, the creditors rely on the language in section 9 of the mortgages, which is the same in all three cases. Under section 9, "[i]f . . . Borrower fails to perform the

10

covenants and agreements contained in this Security Instrument, . . . then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument . . . . Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. . . ."[2] These fees become additional debt secured by the mortgage. One of the obligations under the mortgage is paying "when due the principal of, and interest on, the debt evidenced by the Note" secured by the mortgage. Lighty and the Kings failed to fulfill this aspect of the agreement, as they were behind on their payments when they filed bankruptcy, and thus were in default. The Court also concludes the services performed that resulted in the $425 fees fall within the scope of doing what is "reasonable or appropriate to protect [the creditors'] interests in the Propert[ies] and rights under [the] Security Instrument[s]."[3] Having concluded that payment of the fees is required by the underlying agreement to cure a default, it is unnecessary to determine whether payment of the fees is required to maintain payments.

Counsel for the debtors asserts that the work performed falls outside the scope of the agreements because the services of an attorney are unnecessary in light of the protections provided under the Bankruptcy Code to creditors holding only a security interest in a debtor's

---

[2] Section 9 of the mortgages also allows the creditor to undertake these actions in connection with "a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under [the] Security Instrument." However, the creditors have not pointed to provisions in the notes or mortgages that indicate such a legal proceeding constitutes a default.

[3] Additionally, the services performed appear to fall within the scope of section 14 of the mortgages, which states that "Lender may charge Borrower for fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees."

11

principal residence. However, this argument is unavailing because if a plan that modifies such a creditor's rights in a manner inconsistent with applicable law happened to be confirmed, no authority has been presented for the proposition that the creditor would not be bound by that plan. Stated otherwise, no authority has been presented indicating such creditors can sleep on their rights free of concern about whether their rights might be adversely affected in particular cases. In fact, there is significant authority suggesting the contrary. *See United Student Aid Funds, Inc. v. Espinosa*, 559 U.S. 260, 275 (2010). Indeed, without reviewing a plan to assess whether its rights are being affected or its claims treated in a manner inconsistent with applicable law, how will such a creditor know to object to confirmation of a plan.[4] While a creditor may be able to utilize a non-lawyer to complete the services Polk described as being performed for the $425 fee, it is also reasonable for a creditor to employ an attorney for these services.

b. Whether payment of the fees is required by applicable nonbankruptcy law to cure a default

The second question for the Court is whether payment of the fees at issue is required by applicable nonbankruptcy law to cure a default. In South Carolina, as in most jurisdictions in the United States, "[t]he general rule is that attorney's fees are not recoverable unless authorized by contract or statute." *Baron Data Sys., Inc. v. Loter*, 377 S.E.2d 296, 297 (S.C. 1989). Where a contract provides for "reasonable" attorney fees, as in the cases before the Court, the trial court considers the following six factors in establishing reasonable attorney fees: "[1] the nature,

---

[4] In connection with the propriety of Chase's decision to retain local counsel, Chase's counsel relied in part on *In re Wile*, C/A No. 09-04657-jw (Bankr. D.S.C. Sept. 9, 2010). In *Wile*, this Court found a creditor in contempt for violating a previous order directing it to discontinue filing notices of payment changes on the Court's general docket. However, *Wile* is inapposite to the facts currently before the Court because *Wile* predates the enactment of Rule 3002.1 and because the notices of postpetition mortgage fees, expenses, and charges at issue here were filed in the claims register and not on the Court's general docket. It does not follow from *Wile* that creditors must retain counsel to perform even routine services in a chapter 13 case simply because a creditor was once found in contempt for violations of a Court Order.

12

extent and difficulty of the legal services rendered; [2] the time and labor necessarily devoted to the case; [3] the professional standing of counsel; [4] the contingency of compensation; [5] the fee customarily charged in the locality for similar legal services; and [6] the beneficial results obtained." *Dedes v. Strickland*, 414 S.E.2d 134, 137 (S.C. 1992). While "[c]onsideration should be given to all six criteria in establishing reasonable attorney's fees[,] none of these six factors is controlling." *Barron Data Sys.*, 377 S.E.2d at 297.

i. Nature, extent and difficulty of the legal services rendered

With respect to the nature, extent and difficulty of the legal services rendered, Polk testified the work her firm performed and for which it charged Chase $425 included filing a notice of appearance, reviewing schedules, reviewing public documents, making sure she had the correct documents associated with the particular debtor, reviewing the plan to ensure Chase was included and its treatment was proper, preparing the proposed proof of claim, submitting the proof of claim for Chase's review, making any revisions, and submitting the proof of claim a second time for Chase's review. The $425 also included monitoring the case and reviewing any plan modifications filed post-confirmation. She estimated three hours of paralegal time and one hour of attorney time were spent in connection with the proof of claim filed in Lighty's case. Kelchner proffered that the work performed in connection with the $425 charged in the Kings' case was similar to that undertaken in Lighty's case and a similar amount of time was spent in connection with the proof of claim.[5] The Kings' attorney did not object to this proffer or insist

---

[5] The description on the Rule 3002.1 notices in Lighty's case and the Kings' case of the services performed for the $425 fee is not adequate. The length of the line on the form notice is neither an excuse for not providing a better description, as additional pages could have been attached describing the work performed, nor an indication of the amount of detail that should be included in the description. The deficiency was remedied here by the testimony in support of the notice in Lighty's case and the proffer in the Kings' case. While Federal Rule of Bankruptcy Procedure 2016(a) is inapplicable here because, as far as the Court is aware, the attorneys are not

13

that sworn testimony be provided. The Court has considered the debtors' argument that preparing and filing a proof of claim is a ministerial act for which attorney fees should not be allowed. However, the work performed in Lighty's case and the Kings' case went beyond simply completing and filing a proof of claim. Moreover, when the work described by Polk and Kelchner is performed in the context of an attorney-client relationship as existed between the creditors and their attorneys in these two cases, this work constitutes providing legal services to a client. This factor weighs in favor of the reasonableness of the fees noticed in the Kings' case and Lighty's case.

### ii. Time and labor necessarily devoted to the case

The time and labor spent by the creditors' attorneys in the Kings' bankruptcy and Lighty's bankruptcy was discussed in connection with the previous factor. While the hours spent solely on a proof of claim would seem overstated in routine cases and reflect unnecessary work or an overly fastidious approach to filing a proof of claim, the total fee here is not excessive in light of the broad scope of services provided.

### iii. The professional standing of counsel

No questions have been raised regarding the professional standing of counsel for the creditors in any of the three cases before the Court. Furthermore, the attorneys and law firms involved are experienced in handling bankruptcy matters and frequently appear before this Court. This factor weighs in favor of the reasonableness of the fees.

---

seeking reimbursement from the bankruptcy estate, the Court may find the criteria of Rule 3002.1(e) unsatisfied in future challenges to Rule 3002.1 notices where a fuller description of the services performed is not provided in the notices. Additionally, the creditors here are not entitled to further fees for appearing to justify an initially deficient description of services provided.

### iv. The contingency of compensation

The contingency of compensation is not a factor at play in the cases before the Court, as there has been no indication that the work the creditors' attorneys performed was done on a contingency fee basis.

### v. Fee customarily charged in the locality for similar legal services

With the respect to the fee customarily charged in this locality for the legal services rendered, the Court notes that the amount charged in all three cases is $425. Additionally, while not controlling, the fact that $425 was the Fannie Mae allowable fee reimbursement for servicers for "Proof of Claim Preparation & Plan Review" is also some evidence supporting the creditors' position. This factor weighs in favor of the reasonableness of the fees. The Court expresses no opinion here regarding the $650 now listed in the Fannie Mae guidelines and whether $650 is reasonable.

### vi. Beneficial results obtained

As far as the Court is aware, the plans confirmed in Lighty's case and the Kings' case treat the rights of Chase and CitiMortgage in a manner consistent with applicable law and properly treat their claims. This factor weighs in favor of the reasonableness of the fees.

After careful consideration of these six factors, the Court concludes that $425 is a reasonable fee for the work performed in Lighty's case and the Kings' case.[6]

---

[6] This Court can only consider the reasonableness of fees that have been earned. If a creditor's agreement with an attorney is that the attorney will monitor a case until the plan is completed and a Rule 3002.1 notice and Rule 3002.1(e) motion are filed prior to plan completion reflecting the entire fee the creditor agreed to pay the attorney, the Court may only be able to rule on the reasonableness of the portion of the fee that has been earned. However, this issue has not been raised in the cases before the Court.

*2. Johnnie King's case*

With respect to Johnnie King's case, the record does not contain sufficient evidence from which the Court can conclude that payment of the fees noticed is required by applicable nonbankruptcy law to cure a default or maintain payments. Bayview did not respond to Johnnie King's claim objection or appear at the hearing, and there is insufficient information for a finding that $425 is a reasonable fee for the services reflected on the Rule 3002.1 notice filed in his case. Having reached this conclusion, it is unnecessary to rule on whether payment of the fees in Johnnie King's case is required by the underlying agreement to cure a default or maintain payments.

## **CONCLUSION**

For the reasons set forth herein, it is hereby ORDERED that:

1. Lighty's objection to Chase's claim in case number 13-03324-dd is construed as a motion under Federal Rule of Bankruptcy Procedure 3002.1(e), and payment of the $425 fee Chase noticed is required by the underlying agreement and applicable nonbankruptcy law to cure a default or maintain payments in accordance with section 1322(b)(5) of the Bankruptcy Code;

2. The Kings' objection to CitiMortgage's claim in case number 14-00825-dd is construed as a motion under Federal Rule of Bankruptcy Procedure 3002.1(e), and payment of the $425 fee CitiMortgage noticed is required by the underlying agreement and applicable nonbankruptcy law to cure a default or maintain payments in accordance with section 1322(b)(5) of the Bankruptcy Code; and

3. Johnnie King's objection to Bayview's claim in case number Case No. 14-00922-dd is construed as a motion under Federal Rule of Bankruptcy Procedure 3002.1(e), and payment

of the $425 fee Bayview noticed is not required by the underlying agreement and applicable nonbankruptcy law to cure a default or maintain payments in accordance with section 1322(b)(5) of the Bankruptcy Code.

    AND IT IS SO ORDERED.

**FILED BY THE COURT**
**07/21/2014**



Entered: 07/21/2014

                              David R. Duncan
                              Chief US Bankruptcy Judge
                              District of South Carolina